**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**Indianapolis Division**

| | | |
|---|---|---|
| **MADELYN H. MILLER, on her own behalf and on behalf of all those similarly situated,** | ) | |
| **Plaintiff,** | ) | **Case No. 26-2508** |
| **vs.** | ) | |
| **ANTHEM INSURANCE COMPANIES, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

## CLASS ACTION ERISA COMPLAINT

Plaintiff Madelyn H. Miller, on her own behalf and on behalf of all those similarly situated, to the best of her knowledge, information and belief, formed after an inquiry reasonable under the circumstances, alleges as follows:

### Introduction And Nature Of The Action

**1.** With this Complaint, Plaintiff Madelyn H. Miller ("Miller") challenges her plan administrator/insurer's decision to not credit her payments towards her deductible and annual out-of-pocket limit because the money used to satisfy the cost-sharing requirements originated from a third party – the manufacturers of the drugs Miller must take regularly to treat her chronic inflammatory disease. There is no justification within Defendant Anthem Insurance Companies, Inc.'s ("Anthem") plan language validating this coverage position, which is also contrary to federal law. (A copy of the plan is attached as Exhibit A.) With this Complaint, Miller seeks to recover

those sums she has paid in excess of her cost-sharing requirements and annual out-of-pocket limits that should not have been required and further seeks to reform Anthem's coverage position so that it conforms to federal law and is consistent with its own plan language.

## PARTIES

**2.** Plaintiff Madelyn H. Miller resides and is domiciled in Indianapolis, Indiana. She receives, through her employer, health insurance administered and/or underwritten by Defendant Anthem. The Group Health Plan name for her plan is HSA Plus PPO Indiana.

**3.** Defendant Anthem Insurance Companies, Inc. ("Anthem") is headquartered within this judicial district, at 220 Virginia Avenue, Indianapolis, Indiana 46204. Anthem administers the plan in which Miller participates.

**4.** In this Complaint, "Anthem" refers to the named defendant and all predecessor, successor, subsidiary, parent and related entities to which these allegations pertain. Anthem is the actual legal corporate entity that administers Miller's plan. Because it owns the rights to use the Blue Cross Blue Shield name in Indiana, the corporation conducts its public business under the trade name Anthem Blue Cross and Blue Shield. Miller's health plan is an insurance product created, underwritten and administered by Anthem.

**5.** The insurance that covers Miller is an "employee welfare benefit plan" as that term is defined in ERISA, at 29 U.S.C. § 1002(1) because the insurance was

established by Miller's employer to provide medical, surgical and hospital care benefits to the plan's participants and beneficiaries.

**6.** Miller is a plan "participant" as that term is defined under ERISA because she is an employee of an employer who is eligible to receive a benefit from the "employee welfare benefit plan."

**7.** Anthem is a fiduciary to both the "employee welfare benefit plan" at issue in this case and to Miller and her fellow ERISA participants and beneficiaries because Anthem exercises "any" *discretionary* authority or control of the plan management, and because it exercises "any" authority or control over the management and disposition of the plan's assets. 29 U.S.C. § 1002(21).

## JURISDICTION

**8.** This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 1331. This Court has personal jurisdiction over Anthem because it conducts business within this judicial district.

## VENUE

**9.** Venue is appropriate in this district because Anthem is a citizen of this judicial district and many of the breaches at issue took place here. 29 U.S.C. § 1132(e)(2). Venue is also proper under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Miller's claims occurred within this district.

## BACKGROUND

**10.** Plaintiff Miller was first prescribed Remicade and then Rinvoq to treat her chronic inflammatory disease. These drugs are high-cost medications and have been

effective in managing Miller's medical condition. There are no comparable generic alternatives to either drug.

**11.** Miller participated in Anthem's plan for the 2024 and 2025 plan years.

**12.** Under the plan summary, the participant-only annual deductible was $1,650, and the family annual deductible was $3,300.

**13.** The plan summary states that a participant's deductible is the amount paid through HSA funds or out-of-pocket before the participant reaches the traditional health-coverage portion of the plan.

**14.** The plan summary provides that, once the participant spends up to the applicable deductible for covered services, the plan provides traditional health coverage and applies the stated coinsurance.

**15.** The plan covers prescription drugs and identifies Caremark as the pharmacy-benefit manager.

**16.** Plaintiff has a chronic medical condition for which she used Remicade from 2022 through 2024 and Rinvoq from November 2024 through at least November 2026.

**17.** Plaintiff's medications are prescription drugs, and she used pharmaceutical-manufacturer copay-assistance cards to help pay the cost-sharing required for those medications.

**18.** In the United States, there are about 2,000 patient financial assistance programs offered by about 500 pharmaceutical manufacturing companies.

**19.** There are no medically appropriate generic alternatives for either Remicade or Rinvoq.

**20.** Anthem accepted copay-assistance payments associated with Miller's medications but did not apply those payments toward Miller's deductible or annual out-of-pocket maximum.

**21.** As a result, Miller was required to pay additional amounts from her own funds toward her deductible and annual out-of-pocket maximum even though copay-assistance payments had been made for covered prescription drugs.

**22.** Miller appealed Anthem's refusal to credit the copay-assistance payments toward her deductible and annual out-of-pocket maximum and requested recalculation of those amounts and refunds for out-of-pocket expenses resulting from the refusal.

**23.** Miller's request that her copay assistance be counted toward her deductible and annual out-of-pocket limit was denied. Miller has fully exhausted Anthem's internal appeal requirements.

**24.** Anthem's refusal to credit Miller's copay-assistance payments caused Miller to remain responsible for deductible and cost-sharing amounts that would otherwise have been satisfied by payments accepted for her covered prescription drugs.

**25.** Anthem applies the identical, or materially similar copay-accumulator practices, to other participants and beneficiaries in ERISA-regulated plans for which Anthem administered or insured health benefits.

**26.** Beyond overpaying for the deductible and exceeding the plan's annual limit on cost-sharing, Anthem's copayment practice reduces its own payment obligation for Miller's medically necessary prescription and treatment.

## STANDARD OF REVIEW

**27.** Indiana Department of Insurance Bulletin 103, dated May 8, 2001, provides that health insurers that use discretionary clauses (such as "We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provision[sic] of the Policy") "are inequitable and deceptive, and tend to mislead consumers. Under state law, an insurance policy is subject to the same rules of interpretation and construction as other contracts, and where the policy is ambiguous or silent, it is construed by courts against the company that drafts it."

**28.** The Bulletin doesn't have the force of law, but it is persuasive authority. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (bulletins and interpretive rules of agency administrators, while persuasive, are not controlling.).

**29.** Statutes that *prohibit* discretionary language are saved from ERISA's preemption. *E.g., Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246, 250 n.2 (5th Cir. 2018); *Fontaine v. Metropolitan Life Ins. Co.*, 800 F.3d 883, 889 (7th Cir. 2015); *Am. Council of Life Insurers v. Ross*, 558 F.3d 600, 605-607 (6th Cir. 2009); *Standard Ins. Co. v. Morrison*, 584 F.3d 837, 845 (9th Cir. 2009). Indiana's Bulletin is subject to the same rule – it is persuasive authority and its reach is not preempted by ERISA.

## THE AFFORDABLE CARE ACT *REQUIRES* THAT MANUFACTURER ASSISTANCE COUNT TOWARDS AN INSURED'S DEDUCTIBLE

**30.** The Patient Protection and Affordable Care Act requires health plans to cover 10 essential health benefits. 42 U.S.C. § 18022. Prescription drugs are one of the 10 essential health benefits. *Id*. Employer-sponsored health plans are not required to cover essential health benefits, but if they do, they are subject to the essential health benefits annual limits on cost sharing. (Public Health Services (PHS) Act section 2707(b)(incorporating the requirements of Section 1302(c)(1) of the ACA. CMS, FAQ 508, https://www.cms.gov/cciio/resources/files/downloads/ehb-faq-508.pdf (FAQ 10 confirms that self-insured plans are subject to annual limits on cost-sharing when voluntarily covering EHBs)).

**31.** Cost-sharing is defined as deductibles, coinsurance, copayments, or similar charges and any expenditure required of the insured for a covered essential health benefit. 42 U.S.C. § 18022 (c)(3). The statute provides an enumerated list of cost-sharing that can be excluded, such as premiums, costs for out-of-network providers, and non-covered services. 42 U.S.C. § 18022 (c)(3)(B). Copay assistance provided by pharmaceutical companies is not listed.

**32.** The Department of Health and Human Services has created one additional exception to the cost-sharing requirement. As amended by the 2020 Notice of Benefit and Payment Parameters ("NBPP")–an annual regulation issued by the Department of Health and Human Services - 45 C.F.R § 156.130 (h) clarifies that health plans may, but

are not required to, exclude copay assistance for brand-name medications with medically appropriate generic equivalents.

**33.** Thus, only (1) premiums, (2) out-of-network services, (3) non-covered services, and (4) copay assistance for brand-name medications *with medically appropriate generic equivalents* can be excluded from the health plans' annual limits on cost-sharing. All cost-sharing outside these four exceptions must count towards the annual limit on cost-sharing. Thus, if a plan excludes cost-sharing outside of these four exceptions, the plan violates the Public Health Service Act annual limits on cost-sharing requirements.

**34.** Class members, including Miller, rely on copay assistance from pharmaceutical companies to satisfy cost-sharing requirements, such as deductibles, in their purchase of prescription drugs. These payments are within the definition of "cost-sharing" and must count towards the consumer's annual limits on cost-sharing.

**35.** Anthem violates these requirements. By failing to credit Miller and all other class members for payments made through copay assistance programs, Anthem violates the federal requirements for annual limits on cost-sharing.

**36.** While the **2021** NBPP provided that benefit plans could exclude copay assistance counting towards insureds' deductibles and other cost-sharing, that rule was vacated (*HIV & Hepatitis Pol'y Inst. v. United States HHS*, 728 F. Supp.3d 1 (D. D.C. 2023), and the law reverted back to the **2020** NBPP rule. *HIV v. United States HHS*, 2023 U.S. Dist. LEXIS 236890, *7 n.4 (D. D.C. Dec. 22, 2023).

**37.** As such, the 2020 NBPP is binding and enforceable law on all health plans subject to the annual limits on cost-sharing, including self-insured plans. For example,

in response to *HIV & Hepatitis Pol'y Inst.*, the Nevada Division of Insurance permits insurers to exclude manufacturer coupons from enrollees' cost-sharing limits only when a generic alternative is available consistent with the 2020 NBPP. Nev. Div. of Ins., PY25 NVMED Filing Guidance (Final), slide 52, https://doi.nv.gov/uploadedFiles/doinvgov/Content/Insurers/Life_and_Health/ACA_Plans/PY25_NVMED_%20Filing%20Guidance_FINAL.pdf (last visited Sept. 22, 2026).

## THE PLAN DOES NOT SUPPORT ANTHEM'S COVERAGE POSITION

**38.** Anthem's plan language does not support its coverage position. The plan defines deductibles as "[t]he amount you must pay each calendar year before becoming eligible for reimbursement of medical expenses." (**Tab A, p. 17**). Coinsurance is defined as "[t]he cost-sharing between you and the … Plan." (***Id.* at p. 18**.) Copayments are not defined.

**39.** Nothing in these definitions suggest that payments that originate from a third party and made on behalf of a plan participant do not qualify as either a deductible, copayment or coinsurance.

## CLASS ALLEGATIONS

**40.** Miller brings this action on behalf of the following class:

> All participants or beneficiaries in ERISA-regulated plans underwritten or administered by Anthem whose deductible, copayment, and/or coinsurance payments were not credited because the money used to pay the deductible, copayment, and/or coinsurance originated from either a manufacturer financial assistance program or a pharmacy financial assistance program.

**41.** The class period began six years before the date of the commencement of this action and continues until the date of certification.

**42.** The members of the class are so numerous that joinder of all members is impracticable.

**43.** While the precise number of class members is known only to Anthem, it is the fiduciary and has issued certificates of coverage for thousands of employer-sponsored ERISA plans, and manufacturer and pharmacy assistance has become so widespread that, at minimum, there are thousands of persons whose deductibles, copays, and/or coinsurance payments were wrongfully not credited, and who fit within the class definition.

**44.** The class is ascertainable because its members can be readily identified using Anthem's claims data. Deductibles and copayments are defined internally by Anthem with a discrete set of procedure codes. Class members can be readily and objectively ascertained through use of records maintained by Anthem.

**45.** This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual class members. These include, without limitation:

a. Whether Anthem categorically applied its policy to not credit payments to all class members;
b. Whether Anthem's practice violates federal law; and
c. Whether Anthem's failure to credit class members for payments made on their behalf violated the terms of the class members' plans.

**46.** Miller's claims are typical of the claims of class members because Miller is an ERISA participant in a plan administered by Anthem, her deductibles were satisfied by a copay assistance program that Anthem did not credit towards the satisfaction of her deductible.

**47.** Miller will fairly and adequately protect the interests of the class members. Miller's interests do not conflict with the interests of the members of the class. Further, Miller has retained counsel who are competent and experienced in complex class action litigation, and Miller and her counsel will prosecute this action vigorously on behalf of the class members and have the financial resources to do so. Neither Miller nor her counsel have any interest adverse to those of the class members.

**48.** This action satisfies Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendants.

**49.** This action satisfies Fed. R. Civ. P. 23(b)(2) because by applying a uniform copay accumulator policy, Anthem has acted and refused to act on grounds that apply generally to the class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct to class members, and making final injunctive relief appropriate.

**50.** This action satisfies Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods to fairly and efficiently adjudicate this matter.

Questions of law and fact predominate over questions affecting only individual class members.

**51.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. Further, because the uncredited deductibles, coinsurance and copayments amounts are small compared to the expense and burden of individual litigation, it is impossible for class members to individually redress the harm done, because most class members would not have a rational economic interest in individually prosecuting this action, and the burden imposed on the judicial system by individual litigation by even a small fraction of the class would be enormous, making the class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

**52.** The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

## CAUSES OF ACTION

### COUNT 1

**(*Improper Denial of Benefits On Behalf Of Plaintiff And The Class*)**

**53.** Plaintiff's Count 1 is brought individually and on behalf of the class. It is brought via 29 U.S.C. § 1132(a)(1)(B).

**54.** Plaintiff incorporates by reference paragraphs 1 through 52.

**55.** Plaintiff and the class are entitled to have their deductible, coinsurance and copayments credited to them, regardless of the source of the funds used to pay for those obligations. Anthem's failure to credit those payments to plaintiff and the class breaches federal and state law, breaches its own plan language promises, and is an abuse of its discretion.

**56.** Nowhere does Anthem's certificate suggest that there is a limitation on the funds used to satisfy the deductible.

**57.** Plaintiff and class members have been harmed by Anthem's failure to credit the deductible and copayments payments made, which caused them to pay their own funds to satisfy those obligations and exceed their annual limit on cost-sharing, even after Anthem was fully compensated. In effect, Anthem gets paid twice, at minimum, for consumers' deductibles, coinsurance and copayment requirements.

## <u>COUNT 2</u>

***(Breach Of Fiduciary Duty Individually And On Behalf Of The Class)***

**58.** Plaintiff's Count 2 is for breach of fiduciary duty, brought individually and on behalf of the class. It is brought via 29 U.S.C. § 1132(a)(3).

**59.** Plaintiff incorporates by reference paragraphs 1 through 52.

**60.** Anthem is a fiduciary to, and owes fiduciary obligations to, plaintiff and the class.

**61.** Anthem has breached those fiduciary obligations by calculating deductible and copayment obligations without crediting plaintiff and the class for payments made through funds that originated from alternative sources. This practice breaches federal and state law and further cannot be reconciled with the plan obligations expressed in its own plan documents.

**62.** Plaintiff and the class are entitled to an order that (a) requires Anthem to recalculate deductibles, coinsurance and copayments in a manner that credits them with payments made from alternative sources (b) Anthem improperly calculating deductibles, coinsurance and copayments in the future and (c) reimburses plaintiff and the class for the deductibles and copayments they made when they were not credited with payments made from manufacturer or pharmacy copayment assistance programs.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff Miller demands judgment in her favor and against Anthem as follows:

i. certifying the class, as set forth in this Complaint, and appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

ii. declaring that Anthem wrongfully failed to credit plaintiff's and the class's deductible and copayments made when the funds used to pay those obligations originated from sources other than plaintiff and the class;

iii. ordering Anthem to reimburse plaintiff and the class for all deductible and copayments paid twice;

iv. awarding plaintiff's disbursements and expenses of this action, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), in amounts to be determined by the Court; and

v. granting such other and further relief as is just and proper.

Dated: November 19, 2026

Respectfully submitted:

/s/ Margaret E. Cunningham
Margaret E. Cunningham
Email: mecunningham@strausstroy.com
Robert R. Sparks
Email: rrsparks@strausstroy.com
**STRAUSS TROY CO., LPA**
150 East Fourth Street
Cincinnati., Ohio 45202-8259
Tel: (513) 621-2120

John A. Yanchunis
Email: jyanchunis@ForThePeople.com
Ronald Podolny
Email: ronald.podolny@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505

Jordan Lewis
**JORDAN LEWIS, P.A.**
4473 N.E. 11TH Avenue
Fort Lauderdale, FL 33334
Tel. : (954) 616-8995
Email: jordan@jml-lawfirm.com

*Counsel for Plaintiff*